## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

PABLO A. ZENTENO and MARIA J.
ZENTENO,

      Plaintiffs,

v.                                   Case No. 8:17-cv-02591-T-02TGW

BANK OF AMERICA, N.A.,

      Defendant.
_____/

## ORDER

      This matter is before the Court on Defendant's Motion for Summary

Judgment. Dkt. 156. Plaintiffs filed a Memorandum in Opposition to Defendant's

Motion for Summary Judgment. Dkt. 163. Defendant filed a reply. Dkt. 165. The

Court held a hearing on this matter on March 12, 2020. At the Court's request, the

Parties filed supplemental briefing on the issues relating to the Zenteno

bankruptcy. Dkts. 173, 178, 181. With the benefit of full briefing and able

argument by both sides, the Court grants in part and denies in part Defendant's

Motion for Summary Judgment, Dkt. 156, pursuant to Fed. R. Civ. P. 56.

## BACKGROUND

      Pablo and Maria Zenteno ("Plaintiffs") allege that Bank of America

("BOA") committed common law fraud against them while Plaintiffs were

applying for the Home Affordable Modification Program ("HAMP") after the 2008 financial crisis. Dkt. 100 at 18–21. Plaintiffs allege that BOA made false statements to induce Plaintiffs to default on their mortgage, to incur the expense of resending their application materials, and to make trial payments under the HAMP program which were either retained for profit or applied to fraudulent inspection fees. They also complain of fraudulent and inequitable conduct in the administration of the HAMP program.

On November 14, 2005, Plaintiffs executed a mortgage and note for their home located at 1605 Rydell Lane, Plant City, Florida ("Rydell Lane Home"). The lender was BOA. The Plaintiffs subsequently refinanced the property. Dkt. 100 at 10. Like many Americans, the Plaintiffs experienced financial hardship during the recession and did not make regular payments on their mortgage starting in January of 2009. Dkt. 157 at 2. On March 4, 2009, the U.S. Treasury created HAMP. *Id.* at 3.

On August 20, 2009, the Plaintiffs filed for bankruptcy. Dkt. 178 at 1. On August 21, 2009, the Plaintiffs filed a Chapter 13 Bankruptcy plan which listed the Rydell Lane Home as non-homestead property. Dkt. 173 at 2. On November 7, 2009, BOA filed a Motion for Relief of Automatic Stay in the Bankruptcy so that BOA could "pursue its in rem remedies without further delay". Dkt. 173 at 2. The Plaintiffs did not file an objection or opposition to this motion. *Id.* at 2. Plaintiffs

2

alleged that on "November 9, 2009, BOA loan representatives, Elizabeth and Stephanie, advised Plaintiffs by phone to refrain from making their regular mortgage payments. Elizabeth and Stephanie specifically told Plaintiffs being 'past due' on their mortgage loan was a prerequisite for a HAMP modification eligibility." Dkt. 100 at 10–11. On November 24, 2009, "the Bankruptcy Court entered an Order granting the Motion for Relief and Bank of America proceeded with the foreclosure action." Dkt. 173 at 2.

"In 2010, BOA provided Plaintiffs a HAMP application and they properly completed the application and returned it to BOA with the requested supporting financial documents." Dkt. 100 at 11. Plaintiffs alleged that "on or about November 8, 2010 Plaintiffs were falsely informed by BOA employees, . . . over the phone that the documents were 'not current.'" *Id.* Plaintiffs allege that "on or about December 9, 2010, BOA representatives Elizabeth and Stephanie verbally informed Plaintiffs over the phone that they were 'approved' and requested they make 'trial payments' of $1,438.81 pursuant to [HAMP]." *Id.* at 13. Plaintiffs allege that "[t]his statement was false, as the application wasn't approved. Instead, BOA had no intention of approving the application and this fact was fraudulently omitted from the Plaintiffs." *Id.* "Plaintiffs made three (3) payments of $1,438.81 in 2010[.]" *Id.*

On February 24, 2011, Plaintiffs filed a Statement of Intentions in their bankruptcy, listing the Rydell Lane Home to be surrendered. *In re: Pablo Arturo Zenteno and Maria De Jesus Zenteno*, Case No. 8:09-bk-18431-CPM, Dkt. 56, Statement of Intentions (Bankr. M.D. Fla. Feb. 24, 2011). On June 8, 2011, the Plaintiffs were discharged from Chapter 7 bankruptcy. Dkt. 178 at 2. On April 17, 2012, the Thirteenth Judicial Circuit in and for Hillsborough County entered a final judgment of foreclosure. Dkt. 157 at 5. Plaintiffs moved out of the Rydell Lane Home in 2016. Dkt. 100 at 14.

## LEGAL STANDARD

Under Rule 56, Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996). An issue of fact is "genuine" only if "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if the fact could affect the outcome of the lawsuit under the governing law. *Id.*

The moving party bears the initial burden of identifying those portions of the record demonstrating the lack of a genuinely disputed issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If met, the burden shifts to the

4

non-moving party to "come forward with specific facts showing that there is a genuine issue for trial." *Shaw v. City of Selma*, 884 F.3d 1093, 1098 (11th Cir. 2018) (citation omitted). To satisfy its burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The non-moving party must go beyond the pleadings and "identify affirmative evidence" that creates a genuine dispute of material fact. *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998).

In determining whether a genuine dispute of material fact exists, the Court must view the evidence and draw all factual inferences therefrom in a light most favorable to the non-moving party and must resolve any reasonable doubts in the non-moving party's favor. *Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1136 (11th Cir. 2007). Summary judgment should only be granted "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party[.]" *Matsushita*, 475 U.S. at 587.

## DISCUSSION

BOA raises several grounds for summary judgment. BOA argues first that Plaintiffs' fraud claim belongs to the bankruptcy trustee, so they lack standing to sue. Second, Plaintiffs could not have reasonably relied on BOA's statements because they had equal access to the underlying information. Third, the claim is

5

barred by Florida's four-year statute of limitation for fraud claims. Fourth, Plaintiffs cannot raise this claim because they failed to notify BOA as required by the mortgage agreement. Finally, BOA argues Plaintiffs claim is barred by res judicata. The Court will address each of these arguments in turn.

1) <u>Bankruptcy</u>

As an initial matter the Court must determine the effect of Plaintiffs' bankruptcy on their ability to bring this claim. BOA argues that this claim belongs to the bankruptcy trustee by virtue of Plaintiffs' surrender of the Rydell Lane Home during their bankruptcy, and thus Plaintiffs lack standing. Whether the claim belongs to the trustee is determined by when the claim accrues: if it accrues on or before the commencement of the bankruptcy case, it is part of the bankruptcy estate. *In re Bracewell*, 454 F.3d 1234, 1237 (11th Cir. 2006) ("[T]he property of the debtor's estate is property the debtor had when the bankruptcy case commences, not property he acquires thereafter."); *see also Witko v. Menotte (In re Witko)*, 374 F.3d 1040, 1042–43 (11th Cir. 2004). "[T]he question of whether a debtor's interest in property is property of the estate is a federal question, but the definition of property and issues about the nature and existence of the debtor's interest, are issues of state law." *Bracewell*, 454 F.3d at 1243. Looking to Florida law, a claim accrues when the last element constituting their cause of action occurred. *In re Alvarez*, 224 F.3d 1273, 1277 n.7 (11th Cir. 2000); *see* Fla. Stat. §

95.031(1) ("A cause of action accrues when the last element constituting the cause of action occurs."). So, if the last element constituting the cause of action occurred pre-bankruptcy then it belongs to the bankruptcy trustee, regardless of whether the Plaintiffs listed it on their bankruptcy petition.

Under Florida law "there are four elements of fraudulent misrepresentation: '(1) a false statement concerning a material fact; (2) the representor's knowledge that the representation is false; (3) an intention that the representation induce another to act on it; and (4) consequent injury by the party acting in reliance on the representation.'" *Butler v. Yusem*, 44 So. 3d 102, 105 (Fla. 2010) (citing *Johnson v. Davis*, 480 So. 2d 625, 627 (Fla. 1985)).

Here, the fraud claim is a post-petition claim. The events leading to the fraud claim all occurred after the bankruptcy petition was filed. The Plaintiffs allege that the first fraudulent statement regarding HAMP occurred three months after the Plaintiffs filed for bankruptcy. So, at the time Plaintiffs filed their bankruptcy petition the cause of action for fraud was completely unknown to them and they had no ability to raise the claim. Thus, the fraud claim could not have existed prior to Plaintiffs filing for bankruptcy to be included in the bankruptcy petition.[1] The

---

[1] Unlike in *Bracewell* the Plaintiffs' legal or equitable interest in the claim did not start accruing at the passage of the HAMP legislation, but when the final element of the fraud claim occurred. In *Bracewell* the legislation provided relief to farmers who lost their crops due to natural disasters. *Bracewell*, 454 F.3d at 1245. The conditions necessary for the plaintiff's claim—the failure of his crops—occurred prior to the legislation being passed, so the last element to accrue

fact that the debt was incurred prior to the petition is insufficient to place the claim pre-petition. *See Tyler v. DH Capital Mgmt., Inc.*, 736 F.3d 455, 462 (6th Cir. 2013) ("First, pre-petition conduct or facts alone will not 'root' a claim in the past; there must be a pre-petition violation. . . . In this case, for example, the mere fact that the debt was incurred years before the bankruptcy is irrelevant to the analysis—the question is when the violation occurred."). Therefore, the fraud claim Plaintiffs bring here belongs to them and not to the bankruptcy trustee.

Having established that the fraud claim is post-petition, the next issue is that the Rydell Lane Home was surrendered during Plaintiffs' bankruptcy. The Eleventh Circuit in *In re Failla*, held that when a debtor surrenders their home in bankruptcy they are surrendering it to the trustee and the creditor, as such they may not contest the foreclosure action. *In re Failla*, 838 F.3d 1170, 1177 (11th Cir. 2016). The Eleventh Circuit found opposing the foreclosure would be inconsistent with surrendering all "legal rights to the property[.]" *Id.*

Plaintiffs surrendered the house in February 2011, after many of the alleged statements by BOA and after they paid the three HAMP trial payments. They did not oppose BOA's motion for relief from the stay in November of 2009 and they filed an intent to surrender which included the Rydell Lane Home in February

---

was the existence of the legislation. Here, the allegedly fraudulent statements and Plaintiffs reliance on them create the basis for the fraud claim, thus the claim did not accrue until those statements occurred.

2011. Plaintiffs argue that they only surrendered the home because of BOA's fraudulent statements but there is no evidence in the record to support that contention. Plaintiffs were behind on their mortgage payments prior to HAMP being created by Congress and there is no evidence in the record, excluding their post-deposition declarations, to support that Plaintiffs would have prevented the foreclosure on their home.[2] Further, Plaintiffs claimed a different home as their homestead in their bankruptcy, which is evidence to the Court, that if they were financially able to save a home it would have been the other house.

The evidence in the record does not establish an issue of fact regarding whether the Plaintiffs could have saved their home from foreclosure if the allegedly false statements were not made. The Plaintiffs were in default months before these statements and then proceeded into bankruptcy where they claimed they could not pay all their debts and they surrendered not only this home, but the majority of their property. While it is clear that Plaintiffs wanted to save the Rydell Lane Home from foreclosure, there is no evidence in the record to suggest that they

---

[2] In Pablo Zenteno's declaration, filed in conjunction with response to the motion for summary judgment, he states: "Even though I fully intended to get my Bank of America, NA loan to current status, and communicated such intentions, I followed and relied upon the directions provided to me by Bank of America NA loan representatives and stayed in default status in order to qualify for a HAMP Loan Modification." Dkt. 163 at 95. Maria Zenteno makes an identical statement in her declaration. Dkt. 163 at 98. But these statements, without more, are insufficient to support that Plaintiffs were financially able to save their home, instead they merely indicate that they wanted to save their home. *See United States v. Stein*, 769 F. App'x 828, 832 (11th Cir. 2019) (citing *Jameson v. Jameson*, 176 F.2d 58, 60 (D.C. Cir. 1949) ("Belief, no matter how sincere, is not equivalent to knowledge.")).

actually could. Further there is no evidence that it was BOA's statements that caused the foreclosure on the Rydell Lane Home.[3] Thus, Plaintiffs cannot claim the loss of the Rydell Lane Home as a damage they sustained because of BOA's alleged fraudulent statements.

This, however, is not the end of the analysis on Plaintiffs' fraud claim. The case law clearly resolves two issues in this case. First, the fraud claim involving statements made by BOA regarding the HAMP program is a post-petition claim. Second, the Plaintiffs are barred from bringing a damage claim regarding the loss of the Rydell Lane Home, because they surrendered it in the bankruptcy proceeding. However, this leaves open the question of what to do with the remainder of the fraud claim—the damages caused directly from the allegedly false statements. If the remainder of the fraud claim is tied to the home, then Plaintiffs surrendered it with the home during the bankruptcy. But if the remainder of the fraud claim is separate and distinct from the home, the claim may continue.

---

[3] For, what appears to be, the first time, several years into this litigation, Plaintiffs argue in their response to summary judgment that they were eligible for a HAMP modification and that BOA's fraud prevented them from receiving one. Dkt. 163 at 7. This is a different claim than what the Plaintiffs had initially plead, which was BOA led them to believe they would be approved and then, after taking their trial payments, denied them. Plaintiffs submitted nothing that suggests but for BOA statements they would have otherwise received a HAMP modification. The only reason in the record that Plaintiffs were denied HAMP was a secondary holder refused to allow BOA to keep priority if they allowed for HAMP. Dkt. 158-12. Plaintiffs failed to rebut this reasoning with anything other than conclusionary allegations that cannot survive summary judgment. Further, there is no private right of action against loan servicers under HAMP. *Nivia v. Nation Star Mortg., LLC*, 620 F. App'x 822, 825 (11th Cir. 2015) (citing *Miller v. Chase Home Fin., LLC*, 677 F.3d 1113, 1116 (11th Cir. 2012) (per curiam)).

For the following reasons, the Court finds that the fraud claim is separate and distinct from the surrender of the Rydell Lane Home and that Plaintiffs may continue with this claim. This is a matter of first impression for the Court. Despite the Parties' extensive briefing and the Court's own research on the matter, no on-point cases were identified that deal with this question. The case law analyzes claims involving bankruptcy from two distinct points. First, when the bankruptcy petition is filed and second, when the assets are surrendered. What complicates this case is the facts do not neatly fit within those points. Here, the fraud claim is distinctly post-petition but the asset giving rise to the relationship between the Parties, the Rydell Lane Home, was surrendered years after the bankruptcy petition was filed, with the alleged fraud and resulting damages happening between these points in time.

If the fraud claim had derived from the initial mortgage agreement, then it would be clearly linked to the home. But here, the fraud claim does not arise out of the mortgage. This is not a case about alleged false statements regarding loan modification options included in the initial mortgage. Instead these statements specifically involved an outside, government-sponsored, loan-modification program which had its own application process and qualification factors. The entire purpose behind the HAMP program was to allow debtors who could not meet their obligations under their current mortgages an opportunity to redefine the

terms of that relationship, giving them an option external to the original mortgage they would not have had otherwise. Thus, the logical conclusion to the Court is that a fraud claim resulting from misstatements about HAMP applications is also external to the original mortgage.[4]

That said, to the extent that Plaintiffs are trying to argue this claim as a defense to the foreclosure, they cannot raise it as they already surrendered the home. Further there is no causal link between BOA's statements and Plaintiff surrendering the home in the bankruptcy. But the remainder of the Plaintiffs' fraud claim is separate and distinct from the home.

The Plaintiffs allege BOA committed common law fraud against them by repeatedly telling them that their HAMP application was incomplete and requiring them to send more documents which had already been submitted. Further, they allege that BOA's statements induced them to make HAMP trial payments. These communications caused them to incur costs they would otherwise not have incurred. Viewing the evidence in the light most favorable to Plaintiffs, there remain issues of material fact about Plaintiffs' fraud claim regarding the statements that BOA made and what damages directly resulted from those statements.

---

[4] Finally, BOA stated in its motion for summary judgment that there existed a separate fraud claim apart from the fraudulent inducement of default on the home. Dkt. 156 at 7–8.

2) Reasonable Reliance

BOA argues that Plaintiffs are barred from bring this fraud claim on its statements regarding the HAMP program and its qualifications because the Plaintiffs had access to the same information as BOA. BOA points to *Greenberg v. Miami Children's Hosp. Research Inst., Inc.*, 264 F. Supp. 2d 1064 (S.D. Fla. 2009), to support its claim that Plaintiffs cannot sustain a fraud claim when the information was just as accessible to them as it was to the defendant. Dkt. 156 at 9. However, this case is factually distinguishable from *Greenberg*. *Greenberg* dealt with fraudulent concealment of an intent to patent a scientific discovery. In *Greenberg*, the plaintiffs were active participants in the medical research for which the defendant received a patent; they provided funding and tissue donations over the course of several years. This level of involvement in the process differs from the Plaintiffs here merely providing documents to BOA for its approval.

Further, the concealment of a patent is different than the concealment alleged here. A patent being issued is publicly available information published by a government entity, but the Plaintiffs' HAMP application status was only known to BOA. While the requirements for HAMP were publicly available it was reasonable for the Plaintiffs to rely on statements made to them by BOA about the status of their HAMP application which was being processed by BOA. Unlike with a patent, there is no independent third party reviewing the Plaintiffs' HAMP application that

the Plaintiffs could have checked. Here, Plaintiffs must rely on BOA to determine the status of their application.

The court in *Greenberg* also made a point of saying the plaintiffs could have discovered the defendants' intent to obtain a patent by "a simple phone inquiry to the Defendants[.]" *Greenberg*, 264 F. Supp. 2d at 1074. However, the Plaintiffs here tried repeatedly to call BOA and obtain information and they allege BOA knowingly made false statements regarding their application in response to these calls. This is not a case where there is only an allegation of a failure to disclose information that was otherwise available. Here Plaintiffs have alleged BOA made statements it *knew to be false* combined with selective omissions to cause Plaintiffs to act. This step beyond simple nondisclosure allows Plaintiffs to continue to trial on this claim.

3) <u>Statute of Limitations</u>

Next, BOA argues that the claim is barred because it was not filed within the statute of limitations. Under Florida law, there is a four-year statute of limitations for fraud. Fla. Stat. § 95.11(3). Traditionally, a cause of action accrues "when the last element constituting the cause of action occurs." *Id.* § 95.031(1). "However, actions sounding in fraud do not accrue until 'the facts giving rise to the cause of action were discovered or should have been discovered with the exercise of due diligence.'" *Simony v. Fifth Third Mortg. Co.*, No. 2:14-CV-387-FTM-29DNF,

14

2014 WL 5420796, at *2 (M.D. Fla. Oct. 22, 2014) (quoting Fla. Stat. §

95.031(2)(a)). "Accordingly, fraud causes of action are barred four years after the

plaintiff knew or should have known that the fraud occurred." *Id.* This raises the

question of when Plaintiffs knew or should have known the alleged fraud

occurred.[5]

Here, the earliest indication on record creating facts which indicate a fraud

occurred was the 2014 or 2015 news reports that BOA was allegedly improperly

handling HAMP applications. The uncontroverted testimony of Mr. Zenteno is that

he first heard of "irregularities in the applications" with BOA on a Univision

publication in 2014 or 2015. Dkt. 158-3 at 32–34. There is no evidence in the

record which indicates the Plaintiffs should have been aware of the fraud sooner.

Unlike other fraud cases, there were no later dealings between the parties that

would have alerted Plaintiffs to BOA's alleged fraud. *See, e.g.*, *Altenel, Inc. v.*

*Millennium Partners, L.L.C.*, 947 F. Supp. 2d 1357, 1371 (S.D. Fla. 2013). Here,

Plaintiffs continued to rely on BOA's statements regarding their eligibility for

HAMP and that they were missing documents in their HAMP application. Drawing

---

[5] BOA's citation to *McLean v. GMAC Mortg. Corp.* is unpersuasive. No. 06-22795-CIV, 2008
WL 1956285, at *20 (S.D. Fla. May 2, 2008). Contrary to BOA's contention in its reply, the
majority of the fraud claims in *McLean* were dismissed for reasons other than statute of
limitations. The two sub-claims that were dismissed because of the statute of limitations related
to events where the plaintiffs had actual knowledge of the fraud prior to the four-year limit,
including where they filed a motion to vacate the foreclosure action based on the fraud. There is
no claim of actual knowledge here.

all factual inferences in favor of the non-moving party, this means when the Plaintiffs filed their complaint in 2017, they were within the four-year limitation period for filing.

"Furthermore, the question of when fraud is discovered is a question for the jury." *Bearse v. Main St. Invs.*, 220 F. Supp. 2d 1338, 1345 (M.D. Fla. 2002). Plaintiffs allege they did not discover the fraud until 2016 and the only evidence on the record suggesting the Plaintiffs may have known about the fraud earlier was from hearing news reports in 2014 and 2015, all of which are within the four-year statute of limitation for fraud. Thus, any issue regarding the discovery of fraud prior to that point must go to the factfinder.

However, the Plaintiffs allege BOA charged them improper inspection fees prior to any alleged false statements regarding HAMP, the first of which occurred on November 7, 2009. The only grounds Plaintiffs gives for the "straightforward fraud allegation" was they were still living in the home. Dkt. 163 at 14. As such the statute of limitations for those inspections began when the fees were incurred by the Plaintiffs and they reasonably could have checked that they were being charged. *See Brexendorf v. Bank of Am., N.A.*, 319 F. Supp. 3d 1257, 1263 (M.D. Fla. 2018). This was long before the statute of limitations began to run on

November 1, 2013. So any inspection fee that predates the first allegedly false statement by BOA is barred.[6]

4) <u>Contract Provisions</u>

Next, BOA argues that Plaintiffs' claim is foreclosed because of their failure to satisfy the contractual conditions precedent in the mortgage agreement. Dkt. 156 at 18–19. BOA argues that Plaintiffs' cause of action arises out of the mortgage and, as such, Plaintiffs were required to notify BOA of the alleged breach and give BOA a reasonable period of time to take corrective action prior to filing suit. Since Plaintiffs provided no notice to BOA before filing suit, BOA argues the claim is barred. Plaintiffs argue that they are not suing for breach of contract under the mortgage, so the condition precedent does not apply. Dkt. 163 at 12–13.

To the extent Plaintiffs are claiming omissions of statements that were available to them in their loan documents and implicating the mortgage, they are barred from raising the claim because of their failure to satisfy the condition precedent. *Dykes v. Bank of Am., N.A.*, No. 17-CV-62412-WPD, 2018 WL 7822282, at *3 (S.D. Fla. July 10, 2018). But to the extent that Plaintiffs' claim is premised on false statements of fact regarding their HAMP application or their

---

[6] To the extent the Plaintiffs may have argued that they were part of the *George* class (*George v. Urban Settlement Services*, 1:13-cv-01819-PAB-KLM (D. Colo)) and that the case should be tolled under *American Pipe & Constr. Co.*, 414 U.S. 538 (1974), they raised no such argument in their response to BOA's motion for summary judgment, despite BOA specifically arguing why the Plaintiffs are not members of the *George* class and that *American Pipe* does not provide tolling. As Plaintiffs failed to raise the argument, the Court will not consider it.

approval and subsequent payment of trial payments, these claims do not implicate the notice and cure provision of the mortgage. *Brexendorf v. Bank of Am., N.A.*, 319 F. Supp. 3d 1257, 1265 n.3 (M.D. Fla. 2018) ("The remaining conduct giving rise to the Fraud Claim—that is, the HAMP Eligibility Misrepresentation, Supporting Documents Misrepresentation, Trial Payments Omission, and Inspection Fee Omissions—do not implicate the mortgage."); *Dykes*, 2018 WL 7822282, at *3 ("Plaintiff's claim is premised on the allegations that Defendant's employees made multiple false statements of fact to Plaintiff, including that Defendant had not received her HAMP application, even though she repeatedly submitted it, and that she was falsely informed that she was approved for a trial payment period. These allegations do not arise from the mortgage, nor do they allege any breach of provisions of or duty owed by reason of the mortgage agreement.").[7] Thus, Plaintiffs' claim may continue to trial.

5) Res Judicata

Finally, BOA argues that Plaintiffs' claim should be barred by res judicata. Dkt. 156 at 15. As the Court has already granted summary judgment to BOA for the Rydell Lane Home and any damages claim prior to the first alleged false statement, the only remaining issue is whether res judicata bars the separate and distinct fraud claim. The Court finds that it does not.

---

[7] BOA's arguments regarding breach of contract are denied on the same basis.

Under Florida law, res judicata bars any compulsory counterclaim which meets the logical relationship test. The Florida Supreme Court articulated the test to determine whether a counterclaim can be deemed compulsory:

> [A] claim has a logical relationship to the original claim if it *arises* out of the same aggregate of operative facts as the original claim in two senses: (1) that the same aggregate of operative facts serves as the basis of both claims; or (2) that the aggregate core of facts upon which the original claim rests activates additional legal rights in a party defendant that would otherwise remain dormant.

*Londono v. Turkey Creek, Inc.*, 609 So. 2d 14, 20 (Fla. 1992) (quoting *Neil v. S. Fla. Auto Painters, Inc.*, 397 So. 2d 1160, 1164 (Fla. 3d DCA 1981)).

As established above, the foreclosure action focused on the original mortgage agreement between the Parties and Plaintiffs' default under its terms. The present action asserts that BOA made false statements to induce Plaintiffs to act outside of the terms of the original mortgage agreement. Thus, Plaintiffs' claim in this action involves separate questions of law and fact from those at issue in the foreclosure.[8]

---

[8] *Aguilar v. Se. Bank, N.A.*, 728 So. 2d 744, 746 (Fla. 1999); s*ee, e.g.*, *Sandaler v. Wells Fargo Bank, N.A.*, No. 6:16-CV-1919-ORL-41GJK, 2017 WL 5443149, at *5 (M.D. Fla. Nov. 14, 2017) ("[W]hile the foreclosure action was based on the mortgage and note Plaintiff executed, the instant action is based on Plaintiff's loan modification applications, related documents, and his communications and correspondence—or lack thereof—with Defendant."); *Traver v. Wells Fargo Bank, N.A.*, No. 3:14-CV-895-J-32MCR, 2015 WL 9474612, at *5 (M.D. Fla. Dec. 29, 2015); *Bowen v. Wells Fargo Bank, N.A.*, No. 2:11-CV-91-FTM-29SPC, 2011 WL 3627320, at *4 (M.D. Fla. Aug. 17, 2011) ("This federal case, however, does not advance the same causes of action as in the state case. The issues in this federal case stem from the foreclosure, in that plaintiff asserts that Wells Fargo's actions and misrepresentations led to the foreclosure, but the claims are separate from the foreclosure. . . . In this case, plaintiff's claims arise from the alleged

## CONCLUSION

For the reasons stated above the Court grants in part and denies in part Defendant's Motion for Summary Judgment. Dkt. 156. The Court finds there remain issues of material fact that prevent summary judgment regarding the alleged fraudulent statements by BOA regarding Plaintiffs' HAMP application status and the resulting damages. Summary judgment is granted to Defendant for any damages incurred before November 7, 2009 and for the value of the Rydell Lane Home.

**DONE AND ORDERED** at Tampa, Florida, on August 19, 2020.

*/s/ William F. Jung*

**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO**:
Counsel of Record

---

oral agreement and not from the foreclosure proceeding itself. The Court finds that plaintiff's claims do not pass the *Londono* test, and therefore the claims were not compulsory and are not deemed waived."). *But see Salazar v. Bank of Am., N.A.*, No. 8:17-CV-2535-T-23AEP, 2018 WL 3548753, at *4 n.9 (M.D. Fla. July 24, 2018).